UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HARMONEY D.,

           Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

CASE NO. C22-311-BAT

**ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMSSING THE CASE WITH PREJUDICE**

Plaintiff appeals the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. She contends the ALJ erred by (1) failing to determine that post-concussive syndrome, vestibular dysfunction, depression, and anxiety were severe impairments at step two of the sequential evaluation; and (2) failing to properly weigh and reconcile the conflicting medical opinions. Dkt. 10. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently forty-five years old, has a high-school education, and has worked as a yoga instructor, product demonstrator, and a composite job of salesperson and farm worker. Tr. 34. In October 2018, she applied for benefits, alleging disability as of October 11, 2017. Tr. 16.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMSSING THE CASE WITH PREJUDICE - 1

After her applications were denied initially and on reconsideration, the ALJ conducted a January 2021 hearing, Tr. 52–75, and issued a February 2021 decision, Tr. 16–36.

The ALJ found plaintiff met the insured status requirements of the Social Security Act through December 31, 2022 and had not engaged in substantial gainful activity since the alleged onset date of October 11, 2017. Tr. 18–19. At **step two** of the sequential evaluation, the ALJ determined plaintiff has the severe impairments of **personality disorder** and **complaints of migraines**. Tr. 19. The ALJ determined plaintiff has residual functional capacity ("RFC") to perform a full range of work at all exertional levels with additional physical and mental limitations, including a limitation to simple, routine tasks and the capacity to have only superficial contact with the general public. Tr. 21. At step four, the ALJ found plaintiff could not perform any past relevant work. Tr. 34. At step five, the ALJ determined plaintiff could perform jobs that exist in significant numbers in the national economy, such as day worker, cleaner of lab equipment, and industrial cleaner. Tr. 35. The ALJ therefore concluded plaintiff has not been disabled from the alleged onset date through the date of the decision. *Id.* As the Appeals Council denied plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1–4.

## DISCUSSION

The Court will reverse the ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

First, plaintiff has failed to demonstrate the ALJ harmfully erred at step two by declining to label as severe impairments post-concussive syndrome, vestibular dysfunction, depression, and anxiety. Second, plaintiff has failed to demonstrate that the ALJ misevaluated the conflicting medical opinions. The Court finds the ALJ's decision is supported by substantial evidence and did not misapply legal standards.

**1. Step Two Determination of Severe Impairments**

Plaintiff contends the ALJ harmfully erred at step two by failing to assess as severe impairments post-concussive syndrome, vestibular dysfunction, depression, and anxiety. This contention is unpersuasive. The ALJ assessed severe impairments at step two and did not fail to consider limitations that stemmed even from impairments deemed to be not severe.

Step two of the sequential evaluation is a threshold determination to screen out weak claims; it is not meant to identify the impairments that should be considered when determining RFC. *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017). Because an ALJ considers all limitations imposed by all impairments, severe or not, the assessed RFC should be the same whether the impairments are deemed to be severe or not. *Id.* at 1049. Thus, the failure of an ALJ to deem an impairment severe at step two is harmless if the ALJ considers the limitations posed by the impairment at a later step. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Here the ALJ cited persuasive evidence to discount the severity of physical and mental limitations stemming from post-concussive syndrome, vestibular dysfunction, depression, and anxiety.

With respect to post-concussive syndrome and vestibular dysfunction, the ALJ noted plaintiff's injuries were minor and did not result in significant physical findings or symptoms. Tr. 19. The treatment record shows that upon examination after the two incidents alleged to have caused a concussion and plaintiff's symptoms—when she was struck by the handle of a hand

truck on October 11, 2017 and was in a car accident on October 18, 2017—plaintiff showed no significant distress or abnormalities. *See, e.g.*, Tr. 374–76 (treating physician noting on October 13, 2017, plaintiff had no bump or bruising at site of impact, no dizziness, no memory issues, no balance issues, no neck pain, no sensory disturbances, and clearing her for full duty on October. 19, 2017); Tr. 377–78 (treating nurse practitioner noting on October 18, 2017, plaintiff appeared normal and in no distress, recommending physical therapy, and informing plaintiff that visiting the emergency department was unnecessary). In November 2017, plaintiff stated she could return to work with no limitations, and the treating nurse practitioner agreed and indicated plaintiff could return to work "full duty with no limitation." Tr. 386–87; *see* Tr. 23. In September 2018, examining physician Dr. James M. Haynes, MD, opined plaintiff's head injury was "by no means extreme," that "it is even questionable whether it would rise to the level of concussion," that "there is no basis for any physical diagnosis," and her "symptoms sound certainly more in the psychological sphere." Tr. 731; *see* Tr. 19. Dr. Haynes noted although plaintiff complained even touching a coin made her feel sick to her stomach, plaintiff "[s]omewhat remarkably . . . was able to drive here from Bellevue, and that is freeway speed in Seattle traffic. It takes a certain amount of visual spatial coordinative abilities." Tr. 730.  In September 2018, Dr. Richard E. Marks, MD, neurology, and Dr. Richard E. Bensinger, MD, ophthalmology, opined any possible post-concussive issues had already fully resolved from a physiological standpoint and plaintiff had no objective ophthalmological condition. Tr. 508–09. In June 2019, examining otolaryngologist Dr. James Rockwell, MD, concluded plaintiff's claims of dizziness and hyperacusis were not related to her head injury and explained a true inner ear injury causing both dizziness/disequilibrium issues and development of hyperacusis would have been accompanied by other significant head injuries that plaintiff did not demonstrate, such as a facial fracture, skull

fracture, or brain injuries. Tr. 751. Dr. Rockwell concluded that, from an otolaryngology standpoint, plaintiff needed no further treatment, there were no work restrictions, and there was no impairment. Tr. 752–54.

With respect to anxiety and depression, the ALJ acknowledged plaintiff claimed to have debilitating mental health limitations but found the severity of those limitations was undermined by the medical record. Tr. 22–33. In a September 2018 evaluation, examining psychiatrist Dr. Lanny L. Snodgrass, MD, concluded from a psychiatric perspective, there was no objective data to indicate plaintiff would not be able to return to some reasonable type of work and maintain focus on work, understand and follow work results and instructions, be aware of and follow safety precautions, work with or near other workers, and interact with the public and customers. Tr. 510. Moreover, Dr. Snodgrass disagreed with a Harborview Medical Center recommendation for plaintiff to enter a comprehensive brain injury rehabilitation program because following the recommendation "would only serve to underscore [plaintiff's] perception that she is brain damaged, when in fact this is not the case." Tr. 511. In a June 2019 evaluation, examining psychiatrist Dr. Christine Lloyd, MD, concluded plaintiff has a histrionic personality disorder, as indicated by rapidly shifting and shallow expressions of emotion and using physical appearance to draw attention to herself. Tr. 744–45. For example, plaintiff "was wearing sunglasses throughout the interview but with self-dramatization, theatricality and exaggerated expression of emotion." Tr. 745. Dr. Lloyd opined, "I do not think in any way that the [plaintiff's] newly contended condition of depression is related to her industrial injury . . . ." *Id.* Dr. Lloyd concluded there was no reason to continue psychiatric treatment on the basis of October 2017 injuries and that "it is very important that this woman not be allowed to use a minor injury as the cause for probable, longstanding emotional difficulties." Tr. 746. Dr. Lloyd concluded on a

psychiatric basis, plaintiff could work; could maintain focus on work and understand and follow work rules and instructions; could be aware of and follow safety precautions and work with or near other workers; could keep her emotions under control, as demonstrated by her ability to do that in other positions; and could interact with the public. *Id.*

Moreover, the ALJ discounted plaintiff's physical and mental limitations stemming from any impairments based on plaintiff's inconsistent statements and daily activities. The ALJ noted that the incongruity between plaintiff's allegations regarding her limitations and her actual functioning was so significant that the only reasonable conclusion was plaintiff was intentionally exaggerating her symptoms and limitations, apparently for purposes of secondary gain. Tr. 28. For example, plaintiff's alleged inability to eat due to nausea was inconsistent with no significant weight loss; her alleged inability to see or focus was inconsistent with extensive driving; her alleged inability to care for herself or her daughter was inconsistent with homeschooling her daughter, volunteering to care for her neighbor's daughter for a period of time, planning activities for the girls, returning to work after her injuries before being terminated three months later, and continuing to teach yoga through at least 2019. Tr. 27–28; *see, e.g.*, Tr. 579, 602, 1139, 1183.

The record shows the ALJ did not fail at step two to consider limitations stemming from the non-severe impairments of post-concussive syndrome, vestibular dysfunction, depression, and anxiety. Rather, the ALJ discounted the severity of plaintiff's physical and mental limitations based on any impairments as inconsistent with the medical record, plaintiff's own statements, and plaintiff's daily activities. Because the ALJ found severe impairments at step two and proceeded to consider all limitations, regardless of whether they stemmed from severe or non-severe impairments, any step two error committed by the ALJ was harmless.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMSSING THE CASE WITH PREJUDICE - 6

### 2. Evaluation of the Medical Opinions

Plaintiff contends the ALJ erred by favoring certain opinions over others without providing adequate explanation. This contention is refuted by the ALJ's thorough evaluation of the medical opinions. *See, e.g.*, Tr. 28–34.

Under 20 C.F.R. § 404.1520c(b)(2), (c), the ALJ considers the persuasiveness of the medical opinion using five factors (supportability, consistency, relationship with claimant, specialization, and other), with supportability and consistency being the two most important factors. The decision must explain how the ALJ considered the factors of supportability and consistency, 20 C.F.R. § 404.1520c(b), and must be supported by substantial evidence.

The ALJ found the following opinions to be persuasive as consistent with the evidence, which objectively revealed only minor abnormalities; physical, neurological, and mental status examinations that have been consistently unremarkable; and extensive activities of daily living: the examining opinions of neurologist Dr. Marks, ophthalmologist Dr. Bensinger, and psychiatrist Dr. Snodgrass, Tr. 487–512; the opinions of reviewing state agency consultants physician Dr. JD Fitterer, MD, and psychologist Dr. Christmas Covell, PhD., Tr. 78–111; the examining opinion of neurologist Dr. Haynes, Tr. 725–33; the examining opinion of ophthalmologist Dr. Hopp, Tr. 734–39; the examining opinion of psychiatrist Dr. Lloyd, Tr. 740–47; the examining opinion of otolaryngologist Dr. Rockwell, Tr. 748–54; and the opinions of reviewing state agency consultants physician Dr. Greg Saue, MD, and psychologist Dr. John D. Gilbert, PhD., Tr. 114–55. Tr. 33. The ALJ found the following opinions to be unpersuasive as poorly supported by the objective medical findings, their own examination findings, and the record given their heavy reliance on plaintiff's unreliable subjective complaints that exaggerated fabricated, or described limitations inconsistent with plaintiff's actual functioning: the opinion of

treating physician Dr. Penelope Shima Silber, Tr. 361 (limiting plaintiff's work to 4 hours per day for the month of January 2018, subject to reevaluation); the opinion of examining physician Dr. David Mushick, MD, Tr. 369 (opining in February 2018 that brain injury symptoms have prevented plaintiff from working but that plaintiff might return to sedentary or light-duty work); the opinion of treating physician Dr. Kim Middleton, MD, Tr. 484 (noting that diagnosis of post-concussive syndrome was based on history because "often concussions have normal scans/lab work"), 635–37 (in October 2018, limiting plaintiff to sedentary work and noting that limitations would last for about 4 to 6 months); the opinion of treating counselor Nozomi Kitagawa, MA, LMHC, Tr. 638 (in November 2018, noting mental-health treatment for traumatic brain injury and severe depression and anxiety); the opinion of treating nurse practitioner Catherine McHugh, ARNP, Tr. 1037–39 (in May 2019, noting that plaintiff was limited to sedentary work and that limitations on work would last 6 months); the opinion of treating physician Dr. Sarah Halter, MD, Tr. 1042–43 (in November 2019, noting that plaintiff was severely limited and her condition would impact the ability to work for 6 months); the opinion of treating optometrist Dr. Curtis R. Baxtrom, OD, Tr. 840 (in January 2020, noting that plaintiff was being treated for visual vestibular dysfunction and headaches due to a traumatic brain injury); the opinion of treating counselor Benjamin Rhodes, MA, LMHC, LMHC, MHP, BCPC, DAPA, FAPA, Tr. 1061 (in January 2020, opining that although many of plaintiff's mental symptoms pre-dated the October 2017 accidents, "it is my opinion that these accidents contribute to and exacerbate her level of impairment"); treating counselor Sakisha Bailey, MSW, MHP, Tr. 1341–42 (in January 2021, opining that plaintiff's mental and physical limitations render her unable to return to work); and treating occupational therapist Judith A. Rosevear-Pusey, MS, OTR/L, Tr. 1333 (in August 2019, opining that plaintiff could work no longer than a 4 hour workday).

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMSSING THE CASE WITH PREJUDICE - 8

Although plaintiff disagrees with how the ALJ weighed the evidence, she has not demonstrated that the ALJ's reconciliation of the conflicting medical opinions was unreasonable or unsupported. *See Thomas*, 278 F.3d at 954. Further, the Court cannot say the ALJ's assessment was unreasonable or unsupported. Thus, even if the Court determined the medical evidence is susceptible to more than one reasonable interpretation, plaintiff's and the ALJ's, the Court is required to affirm the ALJ's interpretation.

Plaintiff also does not challenge the ALJ's finding her testimony about her symptoms and complaints were unreliable and inconsistent; rather, plaintiff suggests the opinions of providers who took plaintiff's subjective complaints at face value should be given greater weight despite being undermined by their own examination findings, the objective medical evidence, and plaintiff's frequent exaggeration of symptoms. That is an unsupportable proposition.

The Court accordingly concludes that the ALJ's evaluation of the medical evidence is supported by substantial evidence and did not constitute a misapplication of the law.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 14th day of November, 2022.

BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMSSING THE CASE WITH PREJUDICE - 9